Case No. 14-1112

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

In Re: Murray Energy Corporation,

Petitioner.

On Petition for Extraordinary Writ to the
United States Environmental Protection Agency

**CORRECTED BRIEF OF THE NATURAL RESOURCES DEFENSE COUNCIL, ENVIRONMENTAL DEFENSE FUND, CLEAN WISCONSIN, MICHIGAN ENVIRONMENTAL COUNCIL, OHIO ENVIRONMENTAL COUNCIL, AND SIERRA CLUB, AS *AMICI CURIAE* IN SUPPORT OF RESPONDENT**

Benjamin Longstreth
David Doniger
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
(202) 513-6256
blongstreth@nrdc.org
ddoniger@nrdc.org
*Counsel for Natural Resources Defense Council*

Sean H. Donahue
Donahue & Goldberg, LLP
1130 Connecticut Avenue, N.W.,
Suite 950 Washington, D.C. 20036
(202) 277-7085
sean@donahuegoldberg.com
*Counsel for Environmental Defense Fund*

*Attorneys for Environmental Organization Respondents*
(Additional Counsel Listed on Following Page)

Ann Brewster Weeks
Darin Schroeder
Clean Air Task Force
18 Tremont St., Suite 530
Boston, MA 02108
(617) 624-0234
aweeks@catf.us
dschroeder@catf.us
*Counsel for Clean Wisconsin,*
*Michigan Environmental Council,*
*and Ohio Environmental Council*


Joanne Spalding
Andres Restrepo
Sierra Club
85 Second Street
San Francisco, CA 94105
(415) 977-5725
joanne.spalding@sierraclub.org
*Counsel for Sierra Club*

Megan Ceronsky
Tomás Carbonell
Karimah Schoenhut
Vickie Patton
Environmental Defense Fund
1875 Connecticut Ave. NW
Suite 600
Washington, D.C. 20009
(303) 447-7224
mceronsky@edf.org
tcarbonell@edf.org
kschoenhut@edf.org
vpatton@edf.org
*Counsel for Environmental*
*Defense Fund*

## TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE* ................................................................1

INTRODUCTION ........................................................................... 2

ARGUMENT ................................................................................. 4

    A. Murray Could Only Prevail on the Merits If It Could Show that
       Its Reading of Section 111(d) Were Compelled by the Statute....................5

    B.  Murray's Reading of Section 111(d) Contravenes the Plain Meaning
       of the Senate Amendment. ............................................................ 6

    C. Murray's Reading is Not Unambiguously Compelled Even by the House
       Amendment Considered Alone................................................. 8

    D. The Two 1990 Amendments, Considered Together, Likewise Compel
       Rejection of Murray's Position. .................................................. 13

CONCLUSION ................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*American Electric Power Co. v. Connecticut*,
 131 S. Ct. 2527 (2011)..................................................................... 10

*CBS, Inc. v. FCC*,
 453 U.S. 367 (1981)........................................................................ 8

*\*Chevron U.S.A., Inc., v. NRDC*,
 457 U.S. 837 (1984)........................................................................ 5

*Chisom v. Roemer*,
 501 U.S. 380 (1991)........................................................................ 12

*Citizens to Save Spencer Cty. v. EPA*,
 600 F.2d 844 (D.C. Cir. 1977).......................................................... 5

*Conference Grp., LLC v. FCC*,
 720 F.3d 957 (D.C. Cir. 2013).......................................................... 4

*Desert Citizens Against Pollution v. EPA*,
 699 F.3d 524 (D.C. Cir. 2012).......................................................... 11

*Hui v. Castaneda*,
 559 U.S. 799 (2010)........................................................................ 12

*Loughrin v. United States*,
 134 S. Ct. 2384 (2014)..................................................................... 8

*New Jersey v. EPA*,
 517 F. 3d 574 (D.C. Cir. 2008).......................................................... 14

*Reiter v. Sonotone Corp.*,
 442 U.S. 330 (1979)........................................................................ 7

*Authorities chiefly relied upon are marked with an asterisk.

*Ricci v. DeStefano*,
　　557 U.S. 557 (2009)................................................................ 13, 14

*Scialabba v. Cuellar de Osorio*,
　　134 S. Ct. 2191 (2014)................................................................. 7

*\*Telecomms. Research & Action Ctr. v. FCC*,
　　750 F.2d 70 (D.C. Cir. 1984)........................................................ 1

*United  Sav. Assn of Tex. v. Timbers of Inwood Forest Associates*,
　　484 U.S. 365 (1988)................................................................ 10, 11

*U.S. v. Welden*,
　　377 U.S. 95 (1964)...................................................................... 3

*U.S. Nat'l Bank v. Indep. Ins. Agents of Am.,*
　　508 U.S. 439 (1993)...................................................................... 7

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
　　508 U.S. 439 (1993)...................................................................... 3

*Washington Hospital Center v. Bowen*,
　　795 F.2d 139 (D.C. Cir. 1986)...................................................... 8

*Watt v. Alaska*,
　　451 U.S. 259 (1981).................................................................... 14

*White Stallion Energy Ctr., LLC v. EPA*,
　　748 F.3d 1222 (D.C. Cir. 2014)................................................. 2, 3

*Williams Co. v. FERC*,
　　345 F.3d 910 (D.C. Cir. 2003)...................................................... 7

## STATUTES

\*42 U.S.C. § 7411(d)(1) ............................................................. 3, 15

\*42 U.S.C. § 7412(d)(7) ................................................................ 12

Pub. L. 91–604, § 4(a), 84 Stat. 1678–83 (1970) ............................ 2

Pub. L. 91–604, § 4(a), 84 Stat. 1683 (1970) ........................................................... 2

Pub. L. 91–604, § 4(a), 84 Stat. 1685–86 (1970) .................................................... 2

*Pub. L. 101–549, § 108(g), 104 Stat. 2467 (1990) ................................................. 3

Pub. L. 101–549, § 301, 104 Stat. 2531 (1990).................................................... 2, 3

*Pub. L. 101–549, § 302(a), 104 Stat. 2574 (1990) ................................................. 3

## CODE OF FEDERAL REGULATIONS

40 C.F.R. Pt.  63 ...................................................................................................... 11

## LEGISLATIVE HISTORY

S. 1630, as passed by Senate on April 3, 1990, § 305(a), *reprinted in* LEG. HIST. OF
THE CLEAN AIR ACT AMENDMENTS OF 1990 (1993) ................................................... 3

S. 1630, as passed by House on May 23, 1990, § 108(f), *reprinted in* LEG. HIST. OF
THE CLEAN AIR ACT AMENDMENTS OF 1990 (1993) .................................................. 3

## OTHER AUTHORITIES

42 Fed. Reg. 12,022 (Mar. 1, 1977)........................................................................ 11

70 Fed. Reg. 15,994 (Mar. 29, 2005)...................................................................... 14

Remarks of President George H. W. Bush Upon Signing S. 1630, 26 Weekly
Comp. Pres. Doc. 1824 (Nov. 19, 1990) (signing statement of Nov. 15, 1990) .... 12

Revisor's Note, 42 U.S.C. § 7411............................................................................ 3

## INTEREST OF *AMICI CURIAE*

*Amici* work to protect public health and the environment from climate change caused by carbon dioxide ($CO_2$) and other heat-trapping air pollutants. Power plants are the nation's largest source of $CO_2$ emissions, but there are currently no national limits on their emissions of this harmful pollutant. It is a high priority for *amici* that EPA establish final $CO_2$ emission guidelines for power plants.[1]

Petitioner Murray Energy ("Murray") seeks a truly "extraordinary" judicial decree blocking this EPA rulemaking in midcourse. As EPA shows, bedrock principles specify that judicial review must await the publication of a final rule; the All Writs Act does not authorize Murray's attempted bypass of this limitation; and Murray has not demonstrated its Article III standing. *See* EPA Response 7–20. Even disregarding the dispositive threshold obstacles, the petition must be denied because, far from demonstrating an "outright violation of a clear statutory provision," *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984), Murray's Clean Air Act arguments are meritless.

---

[1] No party, counsel for any party, or anyone aside from *amici*, either authored any part of, or contributed any money toward the preparation or submission of, this brief.

## INTRODUCTION

When Congress enacted the Clean Air Act in 1970, it established a comprehensive framework for regulating emissions of dangerous air pollutants from existing industrial sources. Sections 108–110 of the Act were designed to ensure that states meet national ambient air quality standards for "criteria pollutants" such as particulate matter, through emission controls for existing industrial sources. [2] Section 112 was designed to control existing sources' emissions of hazardous air pollutants, including toxins like mercury and arsenic. [3] Lastly, section 111(d) was designed to control existing sources' emissions of all other dangerous pollutants. Reflecting this seamless framework, the original 1970 version of section 111(d) required EPA to regulate "any existing source for any air pollutant … not included on a list published under section 108(a)," the list of criteria pollutants, "or 112(b)(1)(A)," the list of hazardous air pollutants. [4]

In the 1990 Clean Air Act Amendments, Congress restructured section 112 to control hazardous air pollutants more effectively. Congress listed 189 substances as hazardous air pollutants and required EPA to list categories of industrial sources

---

[2] Pub. L. 91–604, § 4(a), 84 Stat. 1678–83 (1970) (codified as amended at 42 U.S.C. §§ 7408–10).

[3] Pub. L. 91–604, § 4(a), 84 Stat. 1685–86 (1970) (codified as amended at 42 U.S.C. § 7412).

[4] Pub. L. 91–604, § 4(a), 84 Stat. 1683 (1970).

2

that emit them and to set standards limiting those emissions.[5] In revising section 112, Congress deleted the provision cross-referenced in section 111(d)—section 112(b)(1)(A).[6] To account for this deletion, both Houses of Congress proposed amendments to section 111(d). The Senate bill struck "112(b)(1)(A)" and replaced it with "112(b)," the section now containing the list of hazardous air pollutants.[7] The House bill struck "or 112(b)(1)(A)" and replaced it with the phrase "or emitted from a source category which is regulated under section 112."[8] Neither amendment was discussed in committee hearings, in floor debates, or in conference throughout the extensive legislative history of the 1990 Amendments. The Conference Committee failed to reconcile the two amendments, and *both* were included in the final bill passed by Congress and signed into law by President George H. W. Bush.[9]

Although the 1990 Amendments included two separate amendments to the same provision, only the amendment originating in the House bill was codified in

---

[5]  *See* Pub. L. 101–549, § 301, 104 Stat. 2531 (1990); *see White Stallion Energy Ctr., LLC v. EPA*, 748 F.3d 1222, 1229 (D.C. Cir. 2014), *cert. pet'ns pending*, Nos. 14-46, *et al.*

[6] *See* Pub. L. 101–549, § 301, 104 Stat. 2531 (1990).

[7] S. 1630, as passed by Senate on April 3, 1990, § 305(a), *reprinted in* LEG. HIST. OF THE CLEAN AIR ACT AMENDMENTS OF 1990, at 4534 (1993).

[8] S. 1630, as passed by House on May 23, 1990, § 108(f), *reprinted in* LEG. HIST. OF THE CLEAN AIR ACT AMENDMENTS OF 1990, at at 1979 (1993).

[9] Pub. L. 101–549, § 108(g), 104 Stat. 2467 (House amendment); Pub. L. 101–549, § 302(a), 104 Stat. 2574 (Senate amendment).

Title 42 of the U.S. Code.[10] Because Title 42 has not been enacted into positive law, this codification choice is entitled to "no weight."[11] The Statutes at Large—reflecting the text approved by Congress and signed by the President—contains both amendments, and it controls.

As amended at 104 Stat. 2574, the language originating in the Senate bill, Clean Air Act § 111(d)(1)(A) provides:

> The Administrator shall prescribe regulations … under which each State shall submit to the Administrator a plan which (A) establishes standards of performance for any existing source for any air pollutant (i) … which is not included on a list published under section [108(a)] or 112(b) ….

As amended at 104 Stat. 2467, the language originating in the House bill, Clean Air Act §111(d)(1)(A) provides:

> The Administrator shall prescribe regulations … under which each State shall submit to the Administrator a plan which (A) establishes standards of performance for any existing source for any air pollutant (i) … which is not included on a list published under section [108(a)] or emitted from a source category which is regulated under section 112 ….

## ARGUMENT

For the reasons set forth in EPA's response, this petition must be dismissed because there is no reviewable agency action before the Court, nor any petitioner

---

[10] *See* 42 U.S.C. § 7411(d)(1); Revisor's Note, 42 U.S.C. § 7411.

[11] *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964); *see also U.S. Nat Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993).

with Article III standing.[12] Beyond these dispositive threshold defects, Murray cannot show that section 111(d) unambiguously forbids EPA from regulating emissions of a dangerous but non-hazardous pollutant from an existing industrial source if EPA has regulated emissions of any hazardous pollutant from that source under section 112. Murray cannot make this showing for three reasons. First, Murray's interpretation is contrary to the plain language of the Senate provision. Second, Murray's reading is not compelled by the House provision alone. Third, Murray's reading is contrary to any reasonable resolution of possible differences between the two amendments to section 111(d). Thus, even if Murray's petition were properly before this Court, it could not be granted.

## A. Murray Could Only Prevail on the Merits If It Could Show that Its Reading of Section 111(d) Were Compelled by the Statute.

Under *Chevron U.S.A., Inc., v. NRDC*, an agency is bound to adopt a particular interpretation of the statute only if that interpretation is unambiguously required. 457 U.S. 837, 842-44 (1984). Moreover, if two provisions of a statute conflict, it is for "the agency [to effect] an appropriate harmonization of the

---

[12] On November 10, 2014, the Court issued an order granting the opposed motion to intervene of the National Federation of Independent Business ("NFIB"). NFIB's November 3, 2014 motion to intervene (Doc. 1540421) made no effort to demonstrate its Article III standing, although such a showing is required of an intervenor. *See, e.g.*, *Conference Grp., LLC v. FCC*, 720 F.3d 957, 962 (D.C. Cir. 2013) ("As a threshold matter, the court must address whether petitioner … and intervenor … have standing.").

conflicting provisions."[13] Murray can prevail on the merits only if it demonstrates that, considering both of the 1990 amendments to section 111(d), the statute unambiguously requires its reading.

### B. Murray's Reading of Section 111(d) Contravenes the Plain Meaning of the Senate Amendment.

Like the pre-1990 version of section 111(d), the 1990 Senate amendment unambiguously requires EPA to regulate existing sources' emissions of any dangerous air pollutant that is not included on section 108's list of criteria pollutants or section 112's list of hazardous air pollutants. EPA's duty exists whether or not hazardous air pollutants from those sources are regulated under section 112. Thus, under the Senate-originated amendment EPA must regulate power plants' emissions of $CO_2$ (a dangerous pollutant that is neither a criteria pollutant nor listed as a hazardous air pollutant), even though EPA has regulated power plants' emissions of mercury and other air toxics under section 112.

The fact that one of the two enacted amendments to section 111(d) included in the 1990 Clean Air Act Amendments compels EPA to regulate power plants' $CO_2$ emissions under section 111(d) is fatal to Murray's argument that the statute unambiguously *forbids* this regulation. Even if Murray could demonstrate that the

---

[13] *Citizens to Save Spencer Cty. v. EPA*, 600 F.2d 844, 871 (D.C. Cir. 1977) (upholding EPA's harmonization of two inconsistent provisions of the Act that originated in different Houses and were never reconciled).

House amendment clearly denied EPA the authority to regulate power plants under section 111(d), it would have succeeded in demonstrating only that the statute is ambiguous on the question of EPA's authority to regulate these sources. This ambiguity would be EPA's to resolve.[14]

Murray does not contend that its construction of section 111(d) can be squared with the Senate-originated language, or that it can prevail if the Senate amendment is treated as controlling. Instead, Murray argues that the Senate language is just a scrivener's error, and "need not be given any effect." Murray Pet. 19–20. Murray is mistaken on both points. The Senate amendment does not bear the mark of a scrivener's error. Unlike a scrivener's error, which characteristically produces language with "no plausible interpretation"[15] or that does not comport with the law's "object and design,"[16] the Senate amendment produces perfectly sensible language that comports with section 111(d)'s traditional function in the Act's comprehensive regulatory system.

Murray also suggests that EPA must disregard the Senate amendment because it is a "non-substantive" conforming amendment. Murray Pet. 20. Murray

---

[14] *See Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2203 (2014) (plurality opinion); 134 S. Ct.. at 2219 n. 3 (Sotomayor, J., joined by Breyer, J., dissenting) (agreeing with plurality that where agency cannot "simultaneously obey" two statutory commands, "it is appropriate to defer to the agency's choice as to 'which command must give way'" (quotation marks omitted)).

[15] *Williams Co. v. FERC*, 345 F.3d 910, 912 n.1 (D.C. Cir. 2003).

[16] *U.S. Nat'l Bank v. Indep. Ins. Agents of Am.,* 508 U.S. 439, 462 (1993).

ignores the basic rule that "[courts] are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *see also Washington Hosp. Ctr. v. Bowen*, 795 F.2d 139, 149 (D.C. Cir. 1986) (giving full effect to "the plain meaning" of a conforming amendment "in which Congress has directly expressed its intentions"). There is no exception from the rule for conforming amendments. *See, e.g*, *CBS, Inc. v. FCC*, 453 U.S. 367, 381 (1981) (stating "[p]erhaps the most telling evidence of congressional intent, however, is the contemporaneous [conforming] amendment").

### C. Murray's Reading is Not Unambiguously Compelled Even by the House Amendment Considered Alone.

As noted, Murray's argument fails because it depends on pretending that the Senate-originated amendment was never enacted. But even if the House-originated language stood by itself, Murray could not show that its interpretation is unambiguously correct. Murray claims that the only possible reading of the House provision is that it blocks EPA from regulating a source's dangerous but non-hazardous pollutants if EPA has regulated the same source's emissions of hazardous pollutants. [17] But as state *amici* supporting EPA show, the House

---

[17]While Murray grounds its theory in the supposedly plain text of the House-amended section 111(d), *see* Murray Pet. 8, that same text, read literally, means that a pollutant must be regulated under section 111(d) unless it falls within *each* exempted category. *See* EPA Response 29; *Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) ("or" is "almost always disjunctive" (quotation marks omitted)).

amendment admits of plausible readings that would allow EPA to issue emissions guidelines for $CO_2$ emissions from power plants. For example, this provision is reasonably read not to block regulation of non-hazardous pollutants emitted by facilities that also emit hazardous pollutants, but as another way of cross-referencing section 112 and preserving the traditional relationship between sections 112 and 111(d). On that view, the Senate and House versions have essentially the same function and effect, namely, to ensure that section 111(d) addresses harmful pollutants not addressed by section 112.

Another ready basis for interpreting the House version, standing alone, to authorize EPA action against dangerous pollutants like $CO_2$ turns on ambiguity in the term "regulated" as it appears in the phrase "emitted from a source category which is regulated under section 112." Each source category is regulated under section 112, not in the abstract, but with respect to particular pollutants. Hence, the House text could be understood in at least two different ways: either (1) to preclude EPA from establishing section 111(d) emission guidelines for a given air pollutant when the emitting source category is "regulated under section 112" for *any pollutant*, or (2) to preclude EPA from establishing emission guidelines for a

---

Murray ignores that literal interpretation, perhaps because it could render the section 111(d)(1)(A)(i) *exclusions* ineffective. But the very same kind of practical problem condemns Murray's own reading, which, as explained below, renders *section 111(d) itself* ineffective.

9

given pollutant only when the emitting source category is "regulated under section 112" for the *pollutant in question*, *i.e.,* the pollutant that is the candidate for regulation under section 111(d). Murray asserts the House amendment must be read the first way. But the latter reading is far more natural: The House amendment only precludes EPA from regulating a pollutant under section 111(d) if EPA has regulated the *same* pollutant from that source category under section 112.[18]

Further undermining Murray's claim to have discovered the House version's unambiguous meaning, Murray's reading is profoundly antithetical to the structure and purpose of section 111(d) and has no support in the legislative history of the 1990 Amendments. *Cf. United Sav. Assn of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) (interpretation of statutory provision may be "clarified by the remainder of the statutory scheme … because only one of the permissible meanings" of the provision "produces a substantive effect that is compatible with the rest of the law"). Murray claims that the House amendment

---

[18] Indeed, although the precise question here was not at issue in *American Electric Power Co. v. Connecticut*, the Supreme Court appears to have read the House language this way when it wrote that "EPA may not employ [section 111(d)] if existing stationary sources *of the pollutant in question* are regulated under the national ambient air quality standard program, §§ 7408–7410, or the 'hazardous air pollutants program.'" 131 S. Ct. 2527, 2537 n.7 (2011) (emphasis added). In fact, Murray's argument would knock out the underpinnings from the Supreme Court's holding that the Act displaces federal common law, which is predicated upon the Court's repeated observations that section 111(d) authorized regulation of $CO_2$ emissions from existing power plants. *See* 131 S. Ct. at 2537-40.

fundamentally changed section 111(d) from its historic gap-filling function that ensures dangerous pollutants not covered by other programs would be controlled, into a gap-*creating* one that leaves a regulatory no-man's land where dangerous pollutants are immunized from regulation.[19]

Murray's reading of the House provision would eviscerate section 111(d), since virtually every category of the country's large industrial sources of air pollution is subject to section 112 regulation. *See* 40 C.F.R. Pt. 63; EPA Response 25. Thus, Murray's reading would leave EPA no authority to address $CO_2$ or any other pollutant from those industries under section 111(d).[20] Absent any evidence that the House amendment was intended to work a fundamental change in section 111(d)'s function, EPA could not be compelled to interpret it to require such a "sweeping" and "unorthodox" change in a statute. *See Chisom v. Roemer*, 501 U.S.

---

[19] Murray's interpretation would have disruptive implications beyond the $CO_2$ rulemaking Murray seeks to block here. Since 1970, EPA has relied upon section 111(d) to regulate emissions of a variety of harmful air pollutants including sulfuric acid mist, landfill gas, total reduced sulfur, and fluorides from various source categories. Some sources regulated under section 111(d) were also subject to regulation under section 112 as to their hazardous emissions. *See, e.g.*, 42 Fed. Reg. 12,022 (Mar. 1, 1977) (phosphate fertilizer plants). And as noted, virtually all large air pollution sources are listed under section 112.

[20] As far as *amici* are aware, Congress has never allowed sources to release unlimited quantities of some pollutants simply because they must control *other* pollutants. *Cf. Desert Citizens Against Pollution v. EPA*, 699 F.3d 524, 527–28 (D.C. Cir. 2012) (holding EPA reasonably rejected interpretation that "would have the anomalous effect of changing the required stringency" for source's emissions of certain air pollutants "simply on the fortuity" of its other emissions).

11

380, 396 & n.23 (1991) (citation omitted); *see also Hui v. Castaneda*, 559 U.S. 799, 810 (2010) (stating "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest" (quotation marks omitted)).

There is not a shred of evidence that either House of Congress had any such intent. The thrust of the 1990 amendments was decidedly in the opposite direction, requiring EPA to establish stronger standards for more pollutants, and limiting EPA's discretion to leave pollutants uncontrolled. Neither history nor logic supports Murray's suggestion that the legislation widely hailed as "the most significant air pollution legislation in our nation's history"[21] enshrined a loophole for harmful pollutants whenever their sources also emit hazardous pollutants.

The 1990 amendments to section 112 provide pointed evidence that Congress did not intend to eviscerate section 111(d). Along with the revisions to section 112 is a savings provision stating that "[n]o emission standard or other requirement promulgated under this section [112] shall be interpreted, construed, or applied to diminish or replace the requirements of a more stringent emission limitation or other applicable requirement established pursuant to section 111 [and

---

[21] Remarks of President George H. W. Bush Upon Signing S. 1630, 26 Weekly Comp. Pres. Doc. 1824 (Nov. 19, 1990) (signing statement of Nov. 15, 1990).

other programs]." 42 U.S.C. § 7412(d)(7). Congress sought thereby to ensure that strengthening section 112 would not weaken EPA's authority under section 111.

Murray and *amici* invent a purpose for their implausible reading: avoiding "double regulation." Murray Pet. 6, 9; W. Va. Br. 5-6. Their theory fails. The supposed congressional purpose is not reflected in the Clean Air Act; especially in the 1990 amendments, Congress frequently established multiple and overlapping protections for public health and welfare.[22] In any event, it is not "double regulation" for *different* pollutants from a single source category to be regulated under different regulatory programs. Immunizing sources of dangerous pollutants from even "*single* regulation" would be truly aberrant under the Act, and an interpretation producing such a result deserves (to put it mildly) great skepticism.

### D. The Two 1990 Amendments, Considered Together, Likewise Compel Rejection of Murray's Position.

As demonstrated, Murray's reading is (1) directly contradicted by the Senate amendment and (2) not compelled by the House amendment. Furthermore, Murray's position cannot survive any reasonable effort to consider the two 1990 amendments together. See *Ricci v. DeStefano*, 557 U.S. 557, 579-83 (2009) (where

---

[22] For example, power plants already fall under at least four different Clean Air Act programs, sometimes for the same pollutants: emission limitations for criteria pollutants under sections 108–110, new source performance standards under section 111(b), hazardous pollutant standards under section 112, and acid rain requirements under Title IV.

provisions of Title VII "could be in conflict absent a rule to reconcile them," Court adopted construction that "allows the [provision at issue] to work in a manner that is consistent with other provisions of Title VII"); *Watt v. Alaska*, 451 U.S. 259, 267 (1981) (construing potentially discordant statutory provisions "to give effect to each if [it] can do so while preserving their sense and purpose").

As demonstrated above, and as state *amici* in support of EPA also explain, the House Amendment can be construed to maintain EPA's obligation under section 111(d) to regulate dangerous pollutants not addressed under section 112. *Supra* at 8–9. These readings avoid a gutting of section 111(d) that Congress surely did not intend, and they have the virtue of harmonizing the House amendment with the Senate version.

In a 2005 interpretation, supported by West Virginia and four of the other states supporting Murray here, EPA read the two amendments together to authorize section 111(d) regulation in two cases: (1) to control *non*-hazardous air pollutants from existing sources regardless of whether hazardous pollutants from those sources are regulated under section 112, and (2) to control *hazardous* air pollutants from those sources if that pollutant is not regulated under section 112. *See* 70 Fed. Reg. 15,994, 16,031–32 (Mar. 29, 2005), *vacated on other grounds*, *New Jersey v. EPA*, 517 F. 3d 574 (D.C. Cir. 2008). EPA indicates that it is taking comment on its 2005 approach in this rulemaking and has not yet determined whether to

14

maintain or change that interpretation in its final action. EPA Response 9, 30. That approach, which West Virginia et al. *amici* now oppose, would affirm EPA's authority to regulate $CO_2$ emissions from existing power plants. Other approaches to harmonizing the two amendments that are available to EPA also preserve its authority to regulate these emissions.[23]

## CONCLUSION

Murray's challenge is fatally premature. The ongoing public comment period affords an opportunity for anyone (including Murray and its *amici*) to provide their views on the issues presented by the 1990 amendments to section 111(d). EPA has not yet had the opportunity to develop and publish a final decision on these matters, an essential prerequisite for judicial review. As demonstrated above, nothing in the 1990 amendments justifies this extraordinary effort to bypass administrative processes and flout fundamental limits on judicial review.

---

[23] Even if the House amendment were read as narrowly as Murray advocates, the amendments could both be implemented in a manner that would preserve EPA's authority to regulate $CO_2$ emissions from existing power plants. On this approach, the amended statute is treated as creating two distinct and additive directives to EPA, one (Murray's) under which the House amendment directs EPA to regulate dangerous pollutants from sources not regulated under section 112, and one under which the Senate amendment directs EPA to regulate dangerous pollutants that are not listed under section 112. This additive approach fits with the statutory structure that mandates that EPA "*shall* prescribe regulations" for certain air pollutants, 42 U.S.C. § 7411(d)(1) (emphasis added); neither amended version of section 111(d) purports to remove pollutants controlled under other provisions from regulation.

15

Respectfully submitted,

*/s/ Benjamin Longstreth*
Benjamin Longstreth
David Doniger
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
(202) 513-6256
blongstreth@nrdc.org
ddoniger@nrdc.org
*Counsel for Natural Resources*
*Defense Council*

Ann Brewster Weeks
Darin Schroeder
Clean Air Task Force
18 Tremont St., Suite 530
Boston, MA 02108
(617) 624-0234
aweeks@catf.us
dschroeder@catf.us
*Counsel for Clean Wisconsin,*
*Michigan Environmental Council,*
*and Ohio Environmental Council*

Megan Ceronsky
Tomás Carbonell
Karimah Schoenhut
Vickie Patton
Environmental Defense Fund
1875 Connecticut Ave. NW
Suite 600
Washington, D.C. 20009
(303) 447-7224
mceronsky@edf.org
tcarbonell@edf.org
kschoenhut@edf.org
vpatton@edf.org

Sean H. Donahue
    *Counsel of Record*
Donahue & Goldberg, LLP
1130 Connecticut Avenue, N.W.,
Suite 950 Washington, D.C. 20036
(202) 277-7085
sean@donahuegoldberg.com

Joanne Spalding
Andres Restrepo
Sierra Club
85 Second Street
San Francisco, CA 94105
(415) 977-5725
joanne.spalding@sierraclub.org

Dated: November 17, 2014

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of November 2014, I served a copy of the foregoing Corrected amicus brief by filing it through the courts ECF system, which will provide copies to all registered counsel.


*/s/ Benjamin Longstreth*
Benjamin Longstreth